### BYRON WESTON CO. v. L. L. BROWN PAPER CO.

District Court, D. Massachusetts. June 2, 1927.

No. 2516.

Patents ☞328—Weston reissue, 13,730, claim 2, for method of making hinge in paper in course of manufacture, held valid, not anticipated, but not infringed.

Weston reissue patent, No. 13,730, claim 2, for method for making hinge in paper by thinning by air pressure in course of manufacture, held valid, not anticipated, but not infringed by thinning by drag with light air pressure, to prevent stock from running back in course of manufacture.

In Equity. Patent infringement suit by the Byron Weston Company against the L. L. Brown Paper Company. Bill dismissed. See, also, 13 F.(2d) 412.

J. Stanley Churchill, of Boston, Mass., and C. L. Sturtevant, of Washington, D. C., for plaintiff.

Emery, Booth, Janney & Varney, of New York City, for defendant.

MORTON, District Judge. This is a suit for the infringement of reissued patent to Weston on method of making paper, No. 13,730, dated May 12, 1914. It was heard in open court, and at the conclusion of the testimony I took a view of the defendant's machine in operation at its mill in North Adams, Mass., and of the plaintiff's machine in its mill at Dalton, Mass. On the view, I made a careful examination and study of the operation of each machine at the point to which the patents relate, and numerous experiments were made in my presence at each place. The information gained in this way has been extremely helpful in arriving at a decision.

The plaintiff's patent is upon a method of making a thin stripe (or "strip") in a sheet of paper. The stripe makes the sheet more flexible on that line, and such paper is widely used in loose-leaf record and account books, because it will lie flatter than ordinary paper. The plaintiff's invention provides a simple and comparatively inexpensive way of accomplishing a result which theretofore had only been achieved by less direct methods and at much greater expense.

The process relates to paper-making machines of the Foundrinier type. They are very large, being over 100 feet long. Paper stock is fed into one end and a completed sheet of paper is turned off at the other. They are perfectly well known in the art, and I shall not undertake a description of one, but will go directly to the point here involved.

The paper stock consists of fiber in suspension in water; it is very fluid. As it flows to the web wire on which the paper is formed, it is 99 per cent. water and runs like water. The first step is to even up its thickness across the wire. This is done by slice bars, which are merely straight edges set at proper distances above the moving web wire. The thickness of the web of paper is

determined by the second slice bar. As the web moves forward, it is shaken sidewise to interweave the fibers, and the water is continuously withdrawn. The stock becomes less and less fluid as it progresses, and more and more pulpy, until finally it becomes a pulp much like very soft blotting paper. By suction boxes and roller pressure the remaining water is extracted, and the paper is then dried over heated rolls.

The thin stripe, or "hinge," as it is also called, is about two inches wide (as I saw it), and the problem was how to make such a stripe of proper and even thickness, without forming ridges along its edges, which would interfere with the successful use of the paper commercially. Weston discovered that this could be done by the use of air applied either by pressure or suction through a nozzle held close to the wet stock. It was a simple and practical idea, which works successfully.

The single claim in the suit reads:

"2. The method herein described of manufacturing paper having a thinned portion, which consists in removing from the web at the portion to be thinned, along a defined line, some of the material by the application of air pressure thereto."

On the plaintiff's machine no air blast is used. Suction nozzles are placed above the liquid stock a short distance ahead of the drag bar, or second slice bar, at a point where the stock is sufficiently matted and pulpy not to run into and fill up the thinned portions, and they suck away enough of the stock to make a stripe of proper thinness. The stripe thus created remains and becomes permanent as the web dries. The same result can be obtained, although rather less successfully, by the application of a flat jet of air of the proper width and force at a point somewhat further ahead, where the stock has become too pulpy to flow. A good deal was said by counsel and parties, especially on the view, as to the location of the air jet. This is not defined in the patent. The change in the stock from fluid to pulp takes place by gradual and pretty even gradations in a travel of 8 to 10 feet in the web wire, and I do not think that any invention is involved in applying the air pressure at one point or another, although I quite understand that great differences in final results might be caused by differences in that respect. With the disclosures of the patent, anybody skilled in the art would be able to apply the air jet and air suction to a paper-making machine for the purpose specified.

As to the validity of the Weston patent:

There seems to have been no demand for a sheet of paper with a thin stripe until that occasioned by the use of loose-leaf books, which is comparatively recent. The efficacy of a "hinge" formed by thinning the sheet had been known for some time before Weston entered the field, and the thin portion had been made in other ways—e. g., by grinding the finished paper. There is no suggestion in the prior art of a "hinge" formed in the paper as it was manufactured. The only patent which is relied upon as an anticipation, or is of much significance in the prior art, is that to Kron, No. 762,914, dated January 31, 1905. The defendant contends that it is a complete anticipation. The purpose of this patent was to split rolls of asbestos, or other short fibre material, while in a wet, pulpy condition, into very narrow strips for the purpose of spinning. Kron accomplished this by causing "a number of fine sprays of jets of liquid, steam, or air * * * to impinge upon the web of pulp as this is formed and carried forward." Kron patent, p. 1, line 36 et seq. "The jets or sprays which produce the dividing furrows are projected under a very high pressure, and are of great fineness, so that the furrows produced are so fine that, in the subsequent pressing and pressure-drying of the web, they become practically closed, while the fibers of the material which connect the intervening strips are, nevertheless, so readily separable that a slight pull suffices to draw off the strips from the apparently uniform and undivided web." Page 1, lines 48–58. It is said from the defendant that this patent discloses the use of air under pressure to thin to the dividing point a wet web of fibers, and that, given this knowledge, no invention was involved in widening the jets and reducing the pressure, so as to form a strip which was wide and was left sufficiently thick to hold together.

In the seven years between the publication of the Kron patent and the filing of the Weston application, nobody in fact took this step or made such use of Kron's disclosure. As I have said, Weston was, on the evidence before me, the first to use air to form a hinge, as well as the first to form a hinge in the wet stock. The Kron patent was directed to a very different purpose from the patent in suit. Kron's object was to slit a relatively thick web into strips, which could be readily pulled apart and put into spinning machines. He was not at all concerned with the problem to which Weston's invention is directed. The fact that air under high pressure could be used successfully to slit a close-

ly compacted wet web furnishes no suggestion, I think, that air might be used against a rather fluid stock to form a wide thin stripe. This view of the Kron patent eliminates most of the defendant's argument as to the prior art, and renders a detailed consideration of it unnecessary. The principles of law involved are too well settled to require discussion.

On all the evidence, I find and rule that the Weston patent was not anticipated by Kron and is valid.

The final, and the most difficult, question is whether the defendant infringes. The defendant's machine does not have the nozzle of the Weston patent. Under the second slice bar, in line with the tube, a "drag" is attached, which is simply a flat piece of metal somewhat wider than the "hinge," and serves to reduce pro tanto the clearance at that point between the drag bar and the web. It plows away a certain amount of stock. A long tube extends lengthwise over the stock and partially formed pulp in the line of the drag for a distance of several feet. From this tube, sides or curtains hang down, which dip lightly into the stock for a certain distance. There are openings in the under side of the tube (provided with baffle plates to equalize the pressure), through which air is forced under very light pressure. The defendant contends that this drag *"removes"* the stock (see the claim in suit), that the air pressure operates simply to keep it from flowing back into the stripe which has been plowed by the drag, and that therefore the defendant's machine does not infringe the plaintiff's patent, because the material is not *removed* by the air pressure, as the claim specifies. Also, and much more basically, the defendant argues that its method of forming the stripe is not an improvement on adaptation of that of the patent, but is radically different. It is said that the patent explicitly specifies action of an air blast on "pulpy" stock; that liquid stock cannot be successfully treated by the method of the patent, because it would flow back into the depression caused by the jet; and that the defendant's method of reducing the thickness of the stock by a drag and restraining the liquid stock from flowing into the depression by superimposed light air pressure, confined by the curtains attached to the air tube and carried along for some distance until the stock has become sufficiently solid to hold its position, involves a different principle of operation.

The real question is whether the defendant uses the idea of the patent. It says that "my [Weston's] invention consists broadly in a method of producing paper of the character mentioned by treating the web while in the pulp state on the Fourdrinier or cylinder with air pressure, either suction or blast, whereby in the former a portion of the web in a defined line is sucked away, and in the latter a portion is blown away or over onto adjacent portions of the web, thus removing a portion of the web and leaving a thinned strip or strips." Patent, p. 1, line 92 et seq. Substantially the same statement is repeated on page 2, lines 47–52. It will be noticed that the Weston process of forming the stripe makes no use of a drag. It relies solely on the air pressure, when that method is used, applied by a "blast" which blows aside a portion of the pulpy web. This implies a pressure sufficient to move the web by the momentum of the air; the wet pulp is displaced by the air. No means are provided or suggested for preventing the removed portion from flowing back into the stripe; the intention plainly being that the blast shall be applied at a point where the stock is too solid to flow. Otherwise the process would be inoperative. In the defendant's process a drag is used, which, as above stated, thins the fluid stock where the stripe is to be, and the stock is prevented from running back into the stripe by apparatus designed for that purpose and having no counterpart in the process of the patent.

Weston could not patent the broad idea of using air pressure to make or to hold a thin stripe. He could only patent a specified process embodying that idea. Other inventors were free to use air to accomplish the same result, if they did not use it in the way described in the patent. The patent is a pioneer in its field; it covers variations, perhaps wide variations, in the method of working the process; but it does not cover a process which, in its essential characteristics, is not that which it describes.

What step towards the defendant's process does the Weston patent suggest? I do not see that it suggests anything, except that air may be used on wet stock to form a stripe, a mere idea, and as such unpatentable. The defendant's method of accomplishing a result, viz. by the use of a drag and very light air pressure in connection with curtains dipping into the fluid stock for a certain distance ahead of the drag, seems to me to be a radically different solution of the problem from Weston's jet of air under relatively heavy pressure against pulpy stock. While it is true of the defendant's process that, if the drag be removed and the air pressure be largely increased, a commercial stripe can be made, that is not the way in which the de-

fendant worked the process, as I saw it. It used the drag to form the stripe in connection with a very light air pressure, entirely insufficient to make the stripe by itself. I understand that such is the defendant's commercial practice. On all the evidence I reach the conclusion that the defendant's process is not an infringement of the Weston patent.

It follows that there must be a decree dismissing the bill, with costs.